IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 17, 2016

**STATE OF TENNESSEE v. BOBBY LYNCH**

**Appeal from the Criminal Court for Knox County**
**No. 102427     Steven W. Sword, Judge**

**No. E2015-01512-CCA-R3-CD – Filed March 9, 2016**

The Defendant, Bobby Lynch, was convicted by a Knox County Criminal Court jury of third offense simple possession or casual exchange of a controlled substance, a Class E felony. *See* T.C.A. § 39-17-418 (2010) (amended 2014).  The trial court sentenced the Defendant as a career offender to six years' confinement.  On appeal, the Defendant contends that the trial court erred by denying him alternative sentencing.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Keith Lowe, Knoxville, Tennessee, for the appellant, Bobby Lynch.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the trial, Knoxville Police Officer Joe Shackleford testified that he had worked for the police department for nineteen years, that he had received training in the identification and the smell of marijuana, and that he was able to identify marijuana upon sight.  On June 25, 2013, the police department received numerous complaints relative to general criminal activity, including prostitution and drug use, occurring at a particular intersection.  Officer Shackleford responded to the intersection around 10:00 a.m. and saw the Defendant and codefendant Collins sitting on the ground of an open parking lot.  The officer drove to their location and got out of his police cruiser.  Officer Shackleford initially thought the Defendant and codefendant Collins were intoxicated but saw they were each rolling marijuana

cigarettes. He said that the Defendant and codefendant Collins each had a bag containing rolling papers and loose marijuana. Officer Shackleford confiscated the marijuana and issued the Defendant and codefendant Collins citations for the possession of the marijuana. The bag confiscated from the Defendant was received as an exhibit and contained two marijuana cigarettes, loose marijuana, and rolling papers. A video recording from the officer's police cruiser was played for the jury and was consistent with the officer's testimony.

Tennessee Bureau of Investigation (TBI) Special Agent Ashley Cummings, an expert in forensic chemistry, testified that she performed three analyses on the substances contained in the bag confiscated from the Defendant. She concluded that the substances found inside the rolled papers and loose within the bag were marijuana, a controlled substance.

Upon this evidence the jury found the Defendant guilty of simple possession of a controlled substance. After the jury rendered its verdict, additional proof was presented in order to allow the jury to make additional findings of fact relevant to the State's request for enhanced punishment.

Stephanie Ogle, records keeper for the Knox County Criminal Court, presented one previous citation and one previous warrant for simple possession of a controlled substance. Citation number A369081# reflects that on November 29, 2010, the Defendant was convicted of simple possession of marijuana. Warrant number @687065 reflects that on November 23, 2004, the Defendant was convicted of simple possession of marijuana.

Upon this evidence the jury found the Defendant guilty of his third or subsequent offense of simple possession of a controlled substance.

At the sentencing hearing, no witnesses were presented, but the presentence report was received as an exhibit. The report reflects that the Defendant was age forty-seven at the time of the presentence investigation. The Defendant had previous convictions for eight counts of public intoxication, three counts of aggravated burglary, two counts of simple possession, two counts of driving under the influence, attempted especially aggravated robbery, robbery, assault, domestic assault, theft of property valued at $500 or less, criminal impersonation, violation of the habitual traffic offender statute, "unlawful paraphernalia uses and activities," a minor drug-related offense, driving on a suspended license, failure to carry driver's license and to it present upon demand, and two additional traffic-related offenses.

The presentence report reflects that the Defendant received probation previously and that his probation was revoked on five occasions. Likewise, the report reflects that the Defendant received parole and that it was revoked. The report reflects that while the

Defendant was in confinement for his previous convictions, multiple disciplinary reports were filed as a result of his conduct. The report reflects that between May 17, 1993, and June 28, 2007, the Defendant was involved in thirty-four disciplinary matters, which included creating disturbances, refusing cell assignments, disrespect, fighting, violating Tennessee Department of Correction policy, mutilation, drug possession, refusing a drug screen, having positive drug screens, destroying State property, tampering with security equipment, possessing contraband, and threatening a correction officer.

The Defendant dropped out of school during the ninth grade. The Defendant reported he was in the process of obtaining his GED, and he submitted letters from teachers and grades as verification. The Defendant reported excellent mental and physical health. The Defendant said that he began drinking alcohol at age fourteen, that he typically drank "a twelve pack" two or three times weekly, and that he last drank alcohol in 2014. The Defendant said he began smoking marijuana at age thirteen and that he last smoked it in 2014. The Defendant reported he began using cocaine at age eighteen and last used it in 2014. The Defendant began using roxycodone daily at age forty-three and last used it in 2014. While confined in the jail, the Defendant completed a peer support group program in October 2014.

The Defendant reported previous employment at Labor Finders for more than five years and working periodically at Johnson's Siding, Windows, and Doors from 2004 to the time of the presentence evaluation. The Defendant provided a statement during the presentence investigation in which he requested a chance because he finally saw that his life was "not about yourself" and that life was "up to God's will."

A report from probation officer Suzanne Green was received as an exhibit and states that the Defendant was not appropriate for enhanced probation. The report notes the Defendant's previous probation revocations and thirty-five disciplinary matters while in confinement for previous offenses.

The prosecutor argued that the Defendant was a career offender and requested the Defendant serve his sentence in confinement. The prosecutor noted the Defendant's lengthy criminal history and argued he was not a good candidate for alternative sentencing. The prosecutor noted the Defendant's disciplinary matters during his previous periods of confinement.

Trial counsel conceded that the Defendant was a career offender and that the Defendant had many legal troubles during the 1980s and 1990s, which included many of the disciplinary matters while the Defendant was in confinement. Counsel noted, though, that since 2004, the Defendant's legal troubles were associated with his homelessness. Counsel

argued that although the Defendant had not been a perfect citizen, the Defendant was not a menace. Counsel argued that the Defendant's potential six-year sentence at 60% service for rolling a marijuana cigarette was too severe when probation was a viable option. Counsel informed the court that the Defendant had secured a place to live and employment upon his release from confinement. Counsel requested probation and an opportunity for rehabilitation.

The Defendant addressed the trial court. The Defendant conceded he had a lengthy criminal history and said he was not proud of it. The Defendant said he hated himself because he had hurt his family. He said, "We can all change." Relative to his previous disciplinary matters, he said that for the previous seven months he had "walked a chalk line" because "life ain't about me no more, sir."

The trial court found based upon six previous felony convictions that the Defendant was a career offender and imposed a six-year sentence. Relative to whether confinement was necessary to protect society by restraining a defendant with a long criminal history, the court found that the Defendant had a lengthy criminal history. The court noted that many of the violent offenses occurred in the 1980s but determined that the Defendant's recent convictions were generally associated with offenses committed by someone who was homeless, such as public intoxication. The court found that the Defendant's lengthy criminal history warranted a period of confinement. Relative to whether confinement was necessary to avoid depreciating the seriousness of the offense, the court found that the facts of the present case alone did not warrant confinement. Relative to whether confinement would serve as an effective deterrent, the court stated that although the legislature had made repeated drug possession a felony offense, the legislature did not mandate confinement. The court found that the facts of the case did not warrant confinement as a means of deterrence.

The trial court determined that although the Defendant had not received probation recently, his criminal history showed frequent occurrences when alternative sentencing had been unsuccessful. The court found that the Defendant had five previous probation revocations and stated that the revocations did not "bode well for probation now" in light of the thirty-five disciplinary matters when the Defendant was previously incarcerated. Relative to the potential for rehabilitation, the court found that although the Defendant claimed he had been "walking the chalk line" the previous seven months, the Defendant's history indicated he was not amenable to rehabilitation. The court determined that split confinement was insufficient because of the Defendant's lengthy criminal history. As a result, the court ordered the Defendant to serve six years in confinement. This appeal followed.

The Defendant contends that the trial court erred by denying him alternative sentencing. He argues that the trial court's reliance upon the Defendant's previous criminal history to deny alternative sentencing was an abuse of discretion and that the six-year

-4-

sentence in confinement is unjust for a simple possession of marijuana conviction. The State responds that the court properly sentenced the Defendant. We agree with the State.

This court reviews challenges to the manner of service of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the AOC as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2014). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C); *see Trotter*, 201 S.W.3d at 654.

The record reflects that the trial court considered all the appropriate principles and purposes of sentencing. In denying the Defendant's request for alternative sentencing, the court relied heavily upon the Defendant's previous criminal convictions. The record supports the court's finding that the Defendant had a lengthy history of criminal conduct, and we note the Defendant conceded at the sentencing hearing that he had numerous criminal convictions. The record also supports the court's determining that confinement was necessary to protect society from the Defendant's criminal conduct because the Defendant had continued engaging in criminal conduct for the majority of his life. *See id.* § 40-35-103(1)(C). Likewise, the record reflects that the Defendant had received the benefit of probation and parole previously but that the Defendant's probation was revoked on five previous occasions and that his parole was revoked, as well. *See id.* § 40-35-103(1)(B). Furthermore, the Defendant's poor conduct while previously incarcerated supported the court's finding that the Defendant was not amenable to rehabilitation. Although the Defendant was eligible for alternative sentencing, his previous convictions resulted in his unfavorable candidacy for alternative sentencing. *See id* § 40-35-102(6)(A) (stating that "a defendant who is being sentenced for a third or subsequent felony conviction involving separate periods of incarceration or supervision shall not be considered a favorable candidate for alternative sentencing"). The trial court did not abuse its discretion by denying his request for alternative sentencing, and the Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE